ORIGINAL

FILED
SEP 4 2007
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **VERIDYNE, INC.**<br>**370 Reed Road, Suite 105**<br>**Broomall, Pennsylvania 19008**<br><br>**Plaintiff.**<br><br>**v**<br><br>**THE UNITED STATES OF AMERICA**<br><br>**Defendant,** | **No.** 07-647 C |

**COMPLAINT**

**A. PARTIES**

1. Plaintiff Veridyne, Inc. ("Plaintiff" or "Veridyne") is a corporation, organized and existing under the laws of the Commonwealth of Pennsylvania; it is a small business and, at all times relevant hereto, was a certified participant in the Small Business Administration ("SBA") Minority Business Enterprise Program (i.e., the 8(a) Program).

2. Defendant is the United States of America acting through the Department of Transportation ("DOT").

**B. Jurisdiction**

3. Jurisdiction is founded upon the Contract Disputes Act, 41 U.S.C. 601 et seq (the "CDA"); as is more fully set forth infra.

**C. Background**

4. On March 14, 1995, the DOT Maritime Administration ("MARAD") awarded Contract DTMA91-95-C-00024 (the "Contract") to SBA, pursuant to the 8(a) Program.

5. The 8(a) Program participant designated to perform under the Contract was Veridyne, under its then name of Shepard-Patterson & Associates, Inc. (for clarity purposes, the contractor will, at all times herein, be referred to as Veridyne); SBA then awarded Subcontract No. 0303-95-1-00055 (the "Subcontract") to Veridyne.

6. The Contract was an indefinite delivery, indefinite quantity, Cost Plus Award Fee Contract, covering a base year and four one (1) year options.

7. The Contract included the clause at FAR 52.216-7, Allowable Cost and Payment (JUN 1991), pursuant to which the contractor is required to invoice at interim indirect rates, subject to subsequent adjustment (up or down) following audit(s) by the Government.

8. Veridyne began performing on the Contract in 1995 pursuant to work orders issued by MARAD contracting officers.

9. On January 9, 2002, following an audit by the Defense Contract Audit Agency ("DCAA") Veridyne invoiced MARAD the amount of $1,500.94, representing the "net" due Veridyne, pursuant to the finalization of its indirect rates for the base contract year and Option Years 1-3.

10. In early 1998, Veridyne and MARAD contracting personnel began discussions on an extension of the Contract.

11. The discussions between Veridyne and MARAD culminated in the execution of bilateral Modification 0023 to the Contract, by Mr. Wayne Cutrell a MARAD contracting officer and Veridyne's President on May 18, 1998, and by SBA Contracting Officer Ollie Adams on May 20.

12. Modification 0023, in sum and substance, added five (5) additional option years; March 27, 2000, through March 26, 2001, March 27, 2001 through March 26, 2002,

March 27, 2002 through March 26, 2003, March 27, 2003 through March 26, 2004 and March 27, 2004 through March 26, 2005; Modification 0023 provided the following estimated costs and award fee pool (by period):

| | | |
|---|---|---|
| Option Year Five Period | $1,202,982.00 | $87,783.00 |
| Option Year Six Period | $ 808,316.00 | $57,718.00 |
| Option Year Seven Period | $ 379,669.00 | $27,528.00 |
| Option Year Eight Period | $ 230,962.00 | $18,400.00 |
| Option Year Nine Period | $ 172,769.00 | $13,821.00 |

13. On March 22, 2000, MARAD Contracting Officer Williams issued unilateral modification 0032 to the Contract, extending the contract term for an additional year (i.e., the first year of the Modification 0023 extension) from March 27, 2000 through March 26, 2001.

14 By unilateral Modification 0033, dated March 23, 2001, MARAD Contracting Officer Williams exercised the second option under Modification 0023, extending the contract period from March 27, 2001 through March 26, 2002 (the second year of the Modification 0023 extension).

15. On March 22, 2002, MARAD Contracting Officer Williams executed unilateral Modification 0038 to the Contract, exercising the option to extend the term for the period March 27, 2002 through March 26, 2003 (i.e., the second performance year under the Modification 0023 extension).

16. On March 20, 2003, MARAD Contracting Officer Williams executed unilateral Modification 0046 to the Contract, inter alia, extending the Contract for the period March 27, 2003 through March 26, 2004 (i.e., the fourth year under the Modification 0023 extension).

17. On March 19, 2004, MARAD Contracting Officer Williams executed unilateral Modification 0052 to the Contract, exercising the option to extend the term for

the period March 27, 2004 through March 26, 2005 (i.e., the fifth and final year under the Modification 0023 extension).

18. Throughout the course of its performance during the FIVE (5) YEARS added by Modification 0023, Veridyne continued to bill its indirect cost at interim rates, pursuant to FAR 52.216-7.

19. After the end of each additional option year, DCAA would perform an audit and report or Veridyne's actual indirect rates.

20. DCAA provided the following audits of Veridyne's indirect rates for the Modification 0023 performance years:

| | |
|---|---|
| December 18, 2001 | (Y/E 12/31/2000) |
| December 18, 2002 | (Y/E 12/31/2001) |
| December 18, 2003 | (Y/E 12/31/2002) |
| December 14, 2004 | (Y/E 12/31/2003) |

21. On or about December 7, 2004, Veridyne was informed by MARAD's Counsel that MARAD considered Modification 0023 to the Contract to have been void, ab initio, on the basis that Veridyne had to have known that MARAD would order more than the estimated $2,999,994.80 set forth in Modification 0023, thereby making Veridyne's proposal for and acceptance of Modification 0023 tantamount to fraud; Veridyne's contract performance was suspended by MARAD's General Counsel.

22. Following the suspension of Veridyne's performance under the Contract, MARAD refused to pay any of Veridyne's outstanding invoices, all for services ordered by MARAD, provided by Veridyne and accepted by MARAD; those invoices, i.e., Nos. 260 through 266, totaled $1,964,053.28.

23. Unlike previous years, DCAA did not audit Veridyne's accounts to determine actual indirect rates for the year ending December 31, 2004.

24. According to DCAA's audits, Veridyne's actual indirect rates for the first four (4) years of the Modification 0023 extension result in the following year-by-year adjustments:

| | |
|---|---|
| Option Year 5 | $15,090.68 |
| Option Year 6 | $88,722.34 |
| Option Year 7 | $87,128.62 |
| Option Year 8 | $274,997.35 |

25. Based on its own review of accounts for the year ended December 31, 2004, Veridyne determined that MARAD was due a credit of $22,834.20, bringing the net adjustment due Veridyne for Option Years 6 through 9 to $443,104.39.

26. Since MARAD had previously refused to pay Veridyne's invoices that had been approved, Veridyne submitted its request for the aforementioned $443,104.39 as a certified claim under the Contact Disputes Act, 41 U.S.C. § 601 et. seq. ("the Claim").

27. The Claim was submitted to the MARAD Contracting Officer (Erica Williams) by letter dated June 13, 2006; a Final Decision was requested.

28. No Final Decision was issued by the Contracting officer, hence the Claim is "deemed denied."

29. Veridyne is entitled to payment of the $443,104.39 in adjustments due it from MARAD.

WHEREFORE, Plaintiff Veridyne, Inc. requests judgment against Defendant in the amount of $443,104.39, together with Contract Disputes Act interest from June 16, 2006 together with such other relief as the Court deems just and proper.

Respectfully submitted,

**Marc Lamer**
Attorney for Veridyne, Inc.

Kostos and Lamer, P.C.
1608 Walnut Street, Suite 1300
Philadelphia, Pennsylvania 19103
(215) 545-0570

Date: August 31, 2007